UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TRAVIS MOYA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF ALPHARETTA, | ) | CIVIL ACTION NO. |
| ALPHARETTA POLICE CHIEF | ) | 1:22-cv-02942-ELR |
| JOHN ROBISON, ALPHARETTA | ) | |
| POLICE LIEUTENANT R.A. | ) | |
| SPLAWN, ALPHARETTA POLICE | ) | |
| OFFICER MICHAEL ESPOSITO, | ) | |
| ALPHARETTA POLICE OFFICER J.J. | ) | |
| FRUDDEN, ALPHARETTA POLICE | ) | |
| OFFICER CHRISTOPHER | ) | |
| BENFIELD, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

**COMES NOW** Plaintiff Travis Moya ("Plaintiff") and hereby files his Reply Brief in further support of his Motion for leave to file a First Amended Complaint, respectfully showing this Honorable Court that said Motion should be granted.

Defendants oppose Plaintiff's motion for leave to amend (Doc. 27) based solely on alleged futility of the proposed First Amended Complaint (Doc. 27-1) (the "FAC"). "[A] proposed amended complaint is futile where it would be unable to

1

survive Rule 12(b)(6) scrutiny.¹ Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" which "simply requires Plaintiff to allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting her claims."²

Properly accepting as true the allegations in the FAC and drawing all reasonable inferences in Plaintiff's favor, the FAC alleges sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting each of the claims asserted therein.³ Because the FAC is not futile and no "substantial reason exists to deny leave to amend,"⁴ Plaintiff respectfully requests leave to file the FAC to "supersede[] the initial complaint and become[] the operative pleading in the

---

¹ *Evans v. Freese II, Inc.,* No. 1:20-CV-01179-ELR, 2020 WL 10110995, at *5 (N.D. Ga. Dec. 29, 2020).
² *Id.*
³ *Id. Brawner v. City of Atlanta*, No. 116CV03792ELRAJB, 2017 WL 11236927, at *2 (N.D. Ga. June 22, 2017), *adopted as modified*, 2017 WL 11236925 (N.D. Ga. July 18, 2017) (Complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory").
⁴ *Shipner v. E. Air Lines, Inc.,* 868 F.2d 401, 407 (11th Cir. 1989) ("Th[e] policy of rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.").

case," and to deny as moot Defendants' motions for judgment on the pleadings challenging the sufficiency of the superseded initial complaint (Docs. 22 and 23).[5]

## FACTUAL SUMMARY

As alleged in the FAC, Defendants were dispatched to Plaintiff's home to investigate a non-criminal "verbal disturbance," not a crime of family violence or any other criminal activity.[6] Although the 911 dispatcher reported to Defendants that Plaintiff was punching things, growling, and acting wild,"[7] the dispatcher did not provide any information which indicated that criminal activity was afoot, or that Plaintiff posed a threat of harm to himself or any person in his family or had used or threatened to use a weapon,[8] and no violence or injuries were reported.[9]

When Defendants arrived, they observed nothing to corroborate the dispatcher's information. Thus, Defendants did not witness a verbal disturbance or witness Plaintiff growling, punching things, or otherwise acting "wild" in their

---

[5] *Farmers & Merchants Bank v. Fed. Deposit Ins. Corp. for Silverton Bank, N.A.*, No. 1:10-CV-03204-SCJ, 2011 WL 13217056, at *2 (N.D. Ga. Aug. 18, 2011); Brawner, 2017 WL 11236927, at *1 ("[T]he amended complaint renders moot the motion to dismiss the original complaint because that motion seeks to dismiss a pleading that has been superseded.").
[6] Doc. 27-1 at ¶¶ 1, 18).
[7] *Id.* at ¶ 13).
[8] *Id.* at ¶¶ 14-15).
[9] *Id.* at FAC ¶ 22).

3

presence, and instead observed Plaintiff lawfully standing in his driveway next to his wife and daughter, neither of whom indicated that they were afraid of him.[10]

When he first saw Defendants, Plaintiff did not flee or run away into his home and instead remained in his driveway with his wife and daughter.[11] Because they did not believe that Plaintiff posed a threat to anyone, Defendants remained in the street and did not approach Plaintiff, nor did they prevent him from standing next to his wife or daughter.[12] None of the officers ever asked to speak to Plaintiff's stepson or anyone else inside of the home.[13]

Before leaving the driveway, Plaintiff repeatedly attempted to interact with the officers to find out why they were there, which efforts Defendants ignored.[14] Plaintiff never refused to answer a single question from the officers and never attempted to impede the officers from communicating with him, his wife or daughter, or any other person inside his home. Indeed, Defendants spoke to Mrs. Moya at the scene who unequivocally stated that no crimes had been committed at the residence. She further explained that Plaintiff had been acting strange but provided no indication whatsoever that Plaintiff had been physically aggressive or

---

[10] *Id.* at ¶¶ 23-24, 34-35.
[11] *Id.* at ¶¶ 32-33.
[12] Doc. 37 at 3.
[13] *Id.* at ¶ 22.
[14] *Id.* at ¶¶ 32-33.

violent toward anyone inside the house.[15] The FAC does not allege that Defendants had any reason to disbelieve Mrs. Moya.

Nevertheless, as he was approaching his front door, Defendants entered Plaintiff's front yard and commanded Plaintiff to stop and come talk to them. When Plaintiff stopped walking and began talking to Esposito, Esposito immediately commanded him to get on the ground, at which point no reasonable officer could have believed that Plaintiff had committed a crime or otherwise posed any threat of harm to himself, his wife or daughter, or anyone else inside the home.[16] As Esposito commanded Moya to get on the ground and while Plaintiff posed no threat, Defendants Benfield, Frudden, and a third Milton officer approached Plaintiff, physically grabbed him and while handcuffing him, forcibly took Plaintiff to the ground. Defendants improperly disregard the FAC's allegations and claim that Plaintiff "resisted" the officers while he was upright.[17] Esposito's bodycam fully supports and does not directly contradict the FAC's allegations otherwise.

Regardless and in any event, no reasonable officer could have possibly believed that Plaintiff was resisting or otherwise posing any threat <u>after</u> he was taken to the ground. Esposito deployed the K9 to attack while Plaintiff was subdued on

---

[15] *Id.* at ¶¶ 36-40.
[16] *Id.* at ¶¶ 27-29, 34-35, 51-55.
[17] Doc. 37 at 16-17.

the ground and in full physical control of the three officers on top of him, and while Plaintiff was compliant, not moving, not resisting, not attempting to flee, and posing no threat whatsoever.[18] Plaintiff further alleges that Defendants did not give him any verbal commands on the ground until <u>after</u> the K9 began attacking him, in response to which Plaintiff immediately complied and the three officers firmly gripped and continuously secured both of Plaintiff's hands behind his back. Thus, no reasonable officer could have believed Plaintiff was "resisting" the officers' "attempts to pull his arms behind his back to place handcuffs and would not comply by lying flat" or otherwise when Esposito deployed the K9 and allowed the K9 to continue attacking Plaintiff's arm for approximately 45 seconds while Plaintiff was not resisting or posing any threat.[19]

## ARGUMENT AND CITATION TO AUTHORITY

**I.     <u>The FAC plausibly states a claim for false arrest.</u>**

The FAC plausibly alleges that Defendants falsely arrested Moya without actual or arguable probable for obstruction. No reasonable officer could have believed that there was probable cause that Plaintiff "knowingly and willfully obstruct[ed] or hinder[ed] any law enforcement officer . . . in the <u>lawful discharge of</u>

---

[18] Doc. 27-1 at ¶¶ 55-71.
[19] Doc. 37 at 16-17.

his or her official duties."[20] "Although arguable probable cause does not require proving every element of a crime, qualified immunity is not appropriate when a reasonable officer, based on readily available information, would have known that the plaintiff's conduct did not satisfy an element of the offense."[21]

An "essential element" of obstruction is "that the obstruction occurred while the officer was in 'the lawful discharge of his official duties.'"[22] "The law is clear that a police officer is not discharging his lawful duty when he performs a *Terry* detention on a citizen without a particularized and objective basis for suspecting criminal activity. Accordingly, during the course of such improper detention, a citizen is free to ignore requests and/or to walk away."[23]

Because Defendants did not have knowledge of any specific articulable facts or circumstances to reasonably warrant criminal suspicion at the time they stopped Plaintiff from walking into his home, they unlawfully seized and detained Plaintiff without reasonable suspicion of a crime, and were not acting in the lawful discharge

---

[20] O.C.G.A. § 16-10-24(a).
[21] *Jackson v. Cowan*, No. 19-13181, 2022 WL 3973705, at *5–6 (11th Cir. Sept. 1, 2022).
[22] *Woodward v. State*, 219 Ga. App. 329, 330, 465 S.E.2d 511, 512 (1995).
[23] *Strickland v. State*, 265 Ga. App. 533, 538 (2004); *Young v. Brady*, 793 F. App'x 905, 913 (11th Cir. 2019) (denying qualified immunity for violation of the plaintiff's clearly established "Fourth Amendment right to leave a police encounter").

of their duties.[24] "Unless, at the time of the stop, the officers could point to specific articulable facts that reasonably warrant suspicion, the stop cannot be justified."[25]

Defendants admit that they only stopped Plaintiff "so that they could investigate and determine whether he was a danger to himself or others,"[26] not criminal activity.[27] To the extent Defendants assert that they had authority to do so, they are mistaken. The Eleventh Circuit has never interpreted the Fourth Amendment to authorize a police officer to stop citizens to merely <u>investigate</u> and determine whether that person poses a danger to himself or others (as opposed to criminal activity), and has never adopted a rule applying the law of *Terry v. Ohio* to such non-criminal detentions.[28] The Eleventh Circuit has clearly established that "when an officer stops an individual to ascertain that person's mental state (rather than to investigate suspected criminal activity), the Fourth Amendment requires the

---

[24] Defendants' commands unlawfully seized Plaintiff "by physical force, command, or show of authority" and initiated an unlawful *Terry* stop. *Johnson v. State*, 363 Ga. App. 12, 17 (2022) (insufficient evidence of obstruction because officer "was not acting within the lawful discharge of his duties when he commanded Johnson to stop" without reasonable suspicion).

[25] Heard, 725 F. App'x at 751 (analyzing reasonable suspicion at the "moment in time" officers began giving orders which "clearly convey[ed] a message that compliance was required").

[26] Doc. 37 at 11.

[27] Doc. 37 at 11.

[28] *Fisher v. Harden*, 398 F.3d 837, 844 (6th Cir. 2005) (rejecting argument that *Terry v. Ohio* applies to mental health seizures and upholding clearly established rule that mental health seizures must be supported by probable cause).

officer to have <u>probable cause</u> to believe the person is dangerous either to himself or to others."[29] The FAC plausibly alleges that at the time they commanded him to stop and get on the ground, Defendants lacked probable cause that Plaintiff posed a danger to himself or others. Defendants have not presented any argument or evidence indicating otherwise and indeed admit that they were merely attempting <u>to investigate</u> whether the requisite probable cause of dangerousness existed at the time they commanded Plaintiff to stop and get on the ground.[30]

## II. The FAC plausibly states a claim for excessive force.

The FAC plausibly alleges that Defendant Esposito used excessive force in violation of Plaintiff's clearly established Fourth Amendment rights. The law was clearly established such that every reasonable officer would have known that deploying a police K9 to bite and attack Plaintiff while he was in full physical control of three officers on the ground and compliant, not moving, resisting, attempting to

---

[29] *May v. City of Nahunta, Georgia,* 846 F.3d 1320, 1327–28 (11th Cir. 2017); *see also Boatright v. State*, 327 Ga. App. 785, 788 (2014) ("[W}hen an officer takes a person into custody for an involuntary mental-health examination, the seizure must be supported by probable cause.").

[30] Likewise, Georgia law did not authorize Defendants to seize or detain Plaintiff to evaluate or otherwise "investigate" his mental health in the absence of a physician's certificate or court order, or unless (1) the person is committing a penal offense, and (2) the peace officer has probable cause for believing that the person is a mentally ill person requiring involuntary treatment.'" *Boatright v. State*, 327 Ga. App. 785, 788–89 (2014) (citing O.C.G.A. § 37–3–41 and O.C.G.A. § 37–3–42(a)).

flee, or otherwise posing any threat whatsoever, was entirely gratuitous and constituted grossly disproportionate and excessive force.

Because each of the *Graham* factors clearly weighs in Plaintiff's favor, Esposito is not entitled to qualified immunity for his use of objectively unreasonable force.[31] At the time Esposito deployed the K9, and for the reasons discussed more fully above, no reasonable officer could have believed that Plaintiff had committed felony obstruction, misdemeanor obstruction, or any other crime. Nor could any reasonable officer have believed that Plaintiff was resisting, attempting to flee, or posing any immediate threat to anyone on the ground.

Over the last 20 years, Eleventh Circuit has "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."[32] Indeed, even if a suspect previously resisted and threatened officers, "the Eleventh Circuit ha[s] held in plain terms that it is unconstitutionally excessive for officials to use substantial force against a person who has clearly stopped resisting—whether because he has decided to become

---

[31] *Lee v. Ferraro,* 284 F.3d 1188, 1200 (11th Cir. 2002).
[32] *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1343 (11th Cir. 2020)

compliant, he has been subdued, or he is otherwise incapacitated."[33] Thus, even in the absence of particularized similar caselaw, "employing gratuitous force against a docile suspect can meet the 'obvious clarity' test" and is sufficient to overcome qualified immunity.[34]

Contrary to Defendants' suggestions otherwise, the clearly established prohibition against the "use of gratuitous and excessive force against non-resisting suspects" applies regardless of whether the suspect is handcuffed. Although "most of [the Eleventh Circuit's gratuitous force] cases involve plaintiffs who were handcuffed after their arrest before excessive force was used by the officer, the same rationale applies to the use of gratuitous force when the excessive force is applied prior to the handcuffing."[35] Thus, for example, in *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), while an officer was investigating criminal activity, the plaintiff "raised a baseball bat in a threatening posture toward the officer and then fled," but shortly thereafter stopped running and submitted to the officers without resisting While the single officer was attempting to handcuff the plaintiff on his own, the officer broke his arm. The Eleventh Circuit denied qualified immunity because the "broken arm

---

[33] *Eng. v. City of Gainesville*, No. 2:20-CV-147-RWS, 2022 WL 2433384, at *6 (N.D. Ga. Mar. 2, 2022).
[34] *Patel*, 959 F.3d at 1343.
[35] *Patel*, 959 F.3d at 1340.

11

was obviously unnecessary to restrain" the plaintiff when he "was offering no resistance at all." Similarly, in *Stephens v. DeGiovanni*, 852 F.3d 1298 (11th Cir. 2017), the Eleventh Circuit denied qualified immunity to an officer who "slugged" the plaintiff in the chest and threw him into a car-door in the course of a misdemeanor arrest while the plaintiff was compliant and not resisting. The Court held that "no particularized preexisting case law was necessary for it to be clearly established" that the officer used excessive force on these straightforward facts.[36]

Likewise, the facts alleged in the FAC are straightforward and "lead inescapably to the conclusion that the substantial injuries were inflicted on [Moya] in a similarly gratuitous manner, not as an incidental effect of legitimate law enforcement actions."[37] "Because a jury could reasonably find that [Moya] was not resisting, it could reasonably conclude that [Esposito] had no reason to use the force he did on [Moya] that resulted in severe and permanent physical injuries."[38] Esposito nevertheless deployed the K9 to attack Plaintiff in a manner which all but ensured, and did in fact cause Plaintiff to sustain serious and permanent bite injuries. Eleventh Circuit case law "is clear that serious and substantial injuries caused during

---

[36] *Id.*; *see also Ingram v. Kubik*, 30 F.4th 1241, 1252 (11th Cir. 2022) (denying qualified immunity to officer who body slammed a non-resisting suspect who had his hands above his head and posed no threat).
[37] *Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019).
[38] *Patel*, 959 F.3d at 1339–40.

a suspect's arrest when a suspect is neither resisting an officer's commands nor posing a risk of flight may substantiate an excessive force claim."[39] As held in numerous prior cases including but not limited to *Priester*, *Smith v. Mattox*, *DeGiovanni*, *Patel*, and *Kubrick* (and the cases relied on therein), the straightforward facts presented in the instant case "push[] the case into the slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying caselaw."[40] Thus, Defendant Esposito used gratuitous and excessive force in violation of Plaintiff's clearly established Fourth Amendment rights.

### III. The FAC plausibly states a claim for failure to intervene.

The FAC plausibly alleges that Defendants Frudden and Benfield were in immediate proximity to both Plaintiff and K9 Ares during the entire attack and thus had "plenty of time" and opportunity to intervene to stop the use of excessive force. Defendants nevertheless chose to stand by and do nothing.[41] "No particularized case law was necessary for a reasonable police officer to know that, on the facts of this case and given that the duty to intervene was clearly

---

[39] *Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019); *Ingram*, 30 F.4th at 1254 ("Eleventh Circuit precedent clearly established that [Esposito] could not use grossly disproportionate, gratuitous, and seriously injurious force against a non-resisting, compliant, and docile subject").

[40] *Sebastian v. Ortiz*, 918 F.3d 1301, 1310 (11th Cir. 2019).

[41] *Bailey v. City of Miami Beach,* 476 F. App'x 193, 196–97 (11th Cir. 2012).

established, he should have intervened."[42] As such, Defendants Frudden and Benfield are not entitled to qualified immunity for failing to intervene.

**IV.   The FAC plausibly states a claim for failure to train/supervise.**

The FAC plausibly states a claim for failure to train/supervise. Defendants urge that Count IV is futile because K9 Ares' two prior "training accidents" did not cause a pattern of <u>constitutional violations</u> and as such, does not support liability for failure to train. Defendants misconstrue and misrepresent applicable law. "Inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[43] To plausibly state a claim at this early juncture, Plaintiff need only present "some evidence that the municipality knew of <u>a need to train</u> and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."[44]

Despite actual knowledge that the K9 had problems complying with commands and uncontrolled aggression which seriously injured Esposito during initial K9 certification, Defendants allowed K9 Ares to commence regular patrol duties without taking any action to address the K9's problems. When these same

---

[42] *Id.*
[43] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).
[44] *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998) (emphasis added).

14

problems recurred in a subsequent training session, Defendants again did not take any action. A reasonable jury could easily conclude that if a K9 bites and seriously injures his Handler due to uncontrolled aggression and an inability to comply with commands in a controlled training environment, if no action was taken to address the K9's problems, the K9 posed an obvious risk continuing to exhibit those same problems when responding to unfamiliar and uncontrolled environments and surrounded by unfamiliar citizens, placing those citizens at substantial risk of an unjustified K9 attack in violation of the Fourth Amendment.

     K9 Ares did in fact continue exhibiting these same problems in the field and attacked and seriously injured a non-resisting suspect in violation of the Fourth Amendment a few hours before the subject incident. Defendants nevertheless again turned a blind eye and refused to take any action to address K9 Ares' recurring problems, and instead allowed Esposito and the K9 to resume their normal duties. Unsurprisingly, K9 Ares continued exhibiting the same problems he had been exhibiting and attacked and seriously injured Moya against commands and in violation of the Fourth Amendment. Because the FAC alleges ample facts from which a reasonable jury could conclude that Plaintiff's injuries were a "highly predictable consequence" of Defendants' conscious decision to take <u>no</u> action to address the K9's problems, the FAC plausibly alleges deliberate

indifference which "led directly to the very consequence that was so predictable" and was the moving force which caused Plaintiff's injuries.[45]

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests that the Court GRANT Plaintiffs' motion for leave to file the proposed first amended complaint attached hereto, and for such other relief as this Court deems just and proper.

This 29th day of November, 2022.

/s/ Dianna J. Lee
Dianna J. Lee
Georgia Bar No. 163391

**STEWART MILLER SIMMONS TRIAL ATTORNEYS**
55 Ivan Allen Jr. Blvd.
Suite 700
Atlanta, Gerogia 30308
(844) 874-2500 main
dlee@smstrial.com

---

[45] *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409–10 (1997) ("The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right. The high degree of predictability may also support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable.").

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record registered with the CM/ECF system.

This 29th day of November, 2022.

/s/ Dianna J. Lee
Dianna J. Lee
Georgia Bar No. 163391

**STEWART MILLER SIMMONS TRIAL ATTORNEYS**
55 Ivan Allen Jr. Blvd.
Suite 700
Atlanta, Gerogia 30308
(844) 874-2500 main
(470) 344-6719 fax
dlee@smstrial.com
*Counsel for Plaintiffs*